UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DAJUAN TERRENCE KIRKLAND,        )
                                 )
                Petitioner,      )
                                 )
         v.                      )        Case No. 4:21-cv-00919-SRC
                                 )
UNITED STATES OF AMERICA,        )
                                 )
                Respondent.      )

## Memorandum and Order

Unhappy with the Court's Armed-Career-Criminal-Act finding, Petitioner DaJuan Terrance Kirkland, proceeding pro se, seeks to have his conviction vacated under 28 U.S.C. § 2255.   Kirkland asserts that his counsel provided ineffective assistance by failing to prepare him for the Court's potential ACCA finding and failing to object to the ACCA finding in the Presentence Investigation Report.   Kirkland additionally claims that the Court lacked jurisdiction to make the ACCA finding and to impose a sentence based on the finding   Upon review, the Court finds that all four claims lack merit, as the Eighth Circuit has already found Kirkland's ineffective-assistance-of-counsel claims fail, and Kirkland's prior convictions make him an "Armed Career Criminal" under the law.   As such, the Court finds that Kirkland is not entitled to evidentiary hearing or relief under section 2255.

## I.    Procedural history

In December 2017, the United States, by way of criminal complaint, charged Kirkland with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).   *United States v. Kirkland,* 4:17-cr-00616-SRC, Docs. 1–2.[1]   The following week, a

---

[1]The "Doc." numbers used in the "Procedural History" section subsections A through E are from *United States v. Kirkland,* 4:17-cr-00616-SRC.

grand jury indicted Kirkland on one count each of: (1) possession of a firearm by a convicted

felon in violation of 18 U.S.C. § 922(g)(1); (2) possession with intent to distribute a mixture of

substance containing a detectable amount of fentanyl in violation of 21 U.S.C. 841(a)(1); and (3)

possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C.

924(c).   Docs. 13–14.   In June 2018, a grand jury returned a superseding indictment against

Kirkland adding one count of possession of ammunition by a convicted felon in violation of 18

U.S.C. § 922.   Docs. 35–36.   Following his arrest, the Court ordered that Kirkland remain

detained pending trial.   Doc. 23.   Federal Public Defendant Melissa Goymerac represented

Kirkland until March 2018.   Docs. 30–31.   Bobby Bailey, an attorney Kirkland retained,

entered his appearance in February 2018.   Doc. 26.

### A.      Psychological exam

In September 2018, Kirkland filed a pretrial-motions waiver, and the Court set a change-

of-plea hearing for November 2018.   Docs. 41–46.   On the date of the change-of-plea hearing,

the Court[2]  determined that Kirkland should undergo a psychological examination and vacated

the change-of-plea hearing.   Doc. 47.   A few days later, Bailey filed a formal motion

requesting that that Kirkland undergo a psychological examination.   Docs. 48–49.   According

to Bailey's motion, Kirkland suffers from depression and bi-polar disorder, has a history of

schizophrenia, and when he was younger, he experienced auditory and visual hallucinations.

Doc. 48 at ¶ 2.   The Court granted Bailey's motion, and ordered Kirkland to undergo a

psychological assessment to determine whether he is competent to stand trial.   Doc. 49.

Dr. Kari M. Schlessinger, a licensed phycologist with the Federal Bureau of Prisons,

evaluated Kirkland over the course of several days in July and August 2019.   Doc. 50.   During

---

[2]The Honorable Stephen N. Limbaugh, Jr.

the evaluation, Dr. Schlessinger and her staff interviewed Kirkland on several occasions for a total of approximately 12 hours.   *Id.* at. p. 2.   During the interviews, Kirkland expressed frustrations with his plea agreement:

> Regarding Mr. Kirkland's ability to work with his attorney and prepare his defense, the following appears noteworthy. Mr. Kirkland related he met with his attorney approximately six times. He related he felt "lost of what's going on" because he believes he signed a plea deal. He stated he does not know what he signed because he did not read it. He indicated he signed the plea because "the attorney knows best." He acknowledged he could ask his attorney about the plea deal or ask to read the documents he signed.
>
> Mr. Kirkland stated he would ask his lawyer about the plea deal, how much time he would get, and if he should go to trial or not. He believes if he asks his attorney questions, "He will answer them." Mr. Kirkland understood his role in his defense is to "talk with [his lawyer]." Mr. Kirkland was asked what he would like to see as the outcome of his case and if it is realistic. Mr. Kirkland stated he was hopeful for a finding of "not guilty" or "as little time as possible." Despite saying he wanted to be found not guilty, Mr. Kirkland understood he already signed a plea and stated he was guilty.
> . . .
> Mr. Kirkland appears frustrated with his plea, as he stated he signed it "because my lawyer told me to." Mr. Kirkland also appears frustrated with his lack of understanding of the plea. This frustration likely stems from his difficulty reading and providing clear questions to his defense attorney. However, Mr. Kirkland appeared receptive to suggestions about how to communicate with his attorney, particularly surrounding the clarity of the questions he has for his defense attorney. While Mr. Kirkland appears to be rigidly focused, it does not appear to be based on delusional thinking. If he is able to meet with his attorney and ask clear questions about his case, it is this evaluator's opinion he will be able to form a consultative relationship with his attorney. He is currently capable of maintaining proper courtroom behavior, as well as appropriately attending to and participating in courtroom proceedings.

*Id.* at p. 15.   Dr. Schlessinger also noted that:

> Mr. Kirkland is fully oriented and in good contact with reality. He is capable of comprehending the seriousness of his case and the recommendations of defense counsel. He is capable of communicating with counsel, weighing the merits of various defenses, and making decisions regarding numerous constitutional protections such as his right to trial, his right to an attorney, his right to enter into a plea, and his right to call witness, etc. He is capable of testifying in his own defense and speaking during sentencing proceedings should it be necessary.

> It is the opinion of this evaluator Mr. Kirkland has a rational and factual understanding of the proceedings against him and he is capable of assisting counsel with his defense.

*Id.* at p. 16.

Dr. Schlessinger's Report ultimately concludes that "Kirkland currently does present a Mental Disease under the law, that being Unspecified Depressive Order[,]" but Kirkland "does not present [] a Mental Defect." *Id.* at 17. Dr. Schlessinger further found that "Kirkland currently does possess a rational and factual understanding of the proceedings against him, does have the capacity to assist legal counsel in his defense, and can rationally make decisions regarding legal strategy." *Id.* In October 2019, the Court found Kirkland competent to proceed and assist in his own defense. Doc. 52. To ensure that Kirkland fully understood the proceedings, Dr. Schlessinger also made various recommendations, including that an individual speaking to him "should speak slowly and clearly, use vocabulary he understands, and make sure to define terms." Doc. 50 at p. 16.

### B.   Guilty-plea agreement

In September 2020, Kirkland entered into a guilty plea agreement with the United States, and pleaded guilty to a superseding information charging him with two counts of possession a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Docs. 70–72. In exchange for Kirkland's voluntarily guilty plea, the United States agreed to move for the dismissal of any remaining counts from the underlying Superseding Indictment, Docs. 35–36. Doc. 72 at p. 1. The United States also agreed to bring no further federal prosecution in this District relative to Kirkland's possession of firearms, or his possession with the intent to distribute fentanyl on December 13, 2017. *Id.* at pp. 1–2.

4

The Guilty Plea Agreement entered into by Kirkland provides that:

**5. STATUTORY PENALTIES:**

. . .

In certain situations, under Title 18, United States Code, Section 924( e) (Armed Career Criminal), defendant may be subject to a mandatory minimum sentence of fifteen (15) years and a maximum sentence greater than described above. The defendant is pleading guilty with full knowledge of these possibilities, has discussed these possibilities with counsel and will not be able to withdraw the guilty plea if the Court determines the foregoing statute applies to defendant's sentence. However, both parties retain the right to litigate whether Section 924( e) applies to defendant's sentence.

…

**6. U.S. SENTENCING GUIDELINES:   2016 MANUAL**

…

**d. Estimated Total Offense Level:**   The parties estimate that the Total Offense Level is 14, 20, or 24, as found in Sentencing Guidelines § 2K2. 1 ( a), unless defendant is a Career Offender or Armed Career Criminal. Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B 1.1 or an Armed Career Criminal pursuant to Title 18, United States Code, Section 924(e) and Section 4Bl.4. If the Court finds defendant is a Career Offender or an Armed Career Criminal or both, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the defendant is or is not a Career Offender or an Armed Career Criminal.

Regardless of the Total Offense Level, the parties agree to jointly recommend a sentence of 84 months at the time of sentencing

**e. Criminal History:**   The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

*Id.* at pp. 6–7.

C. **Change-of-plea hearing**

The Court[3] held a change-of-plea hearing in September 2020; rather than the undersigned's typical 30-minute plea hearing, Kirkland's plea hearing lasted 90 minutes.    Doc. 71.    Kirkland pleaded guilty to a superseding information, charging him with two counts of possession a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).    Doc. 70. During the hearing, the Court asked Kirkland several questions to ensure that he understood the nature of the proceedings.    *Id.*    The Court first inquired about Kirkland's competency and understanding of his plea agreement:

| | |
|---|---|
| **THE COURT:** | Okay. In this case we have a guilty plea agreement that you've signed. You are aware of that; right? |
| **[KIRKLAND]:** | Yes, sir. |
| **THE COURT:** | And you also signed a waiver of indictment; right? |
| **[KIRKLAND]:** | Yes, sir. |
| **THE COURT:** | I understand you signed the waiver of indictment this morning. |
| **[KIRKLAND]:** | Yes, sir. |
| **THE COURT:** | Were you able to understand everything in the waiver of indictment? |
| **[KIRKLAND]:** | Yes, sir. I talked with my attorney. |
| **THE COURT:** | Mr. Bailey has explained everything to you in the waiver of indictment and you understood it; right? |
| **[KIRKLAND]:** | Yes, sir. |
| **THE COURT:** | And in the guilty plea agreement, did Mr. Bailey explain everything to you and were you able to understand it all? |
| **[KIRKLAND]:** | Yes, sir. |

---

[3]The Honorable Stephen R. Clark.

| | |
|---|---|
| THE COURT: | All right. If at any time today I or one of the attorneys say something that you don't understand, I need you to let me know that. Okay? |
| [KIRKLAND]: | Yes, sir. |
| THE COURT: | And, like I said, we are not in a hurry; so I will make sure you understand everything we are doing here today. So I understand you've been diagnosed with some mental illnesses and some other issues. Do you understand that, too? |
| [KIRKLAND]: | Yes, sir. |
| THE COURT: | All right. So do you remember when you gave interviews to some doctors up in New York for what was called your "competency evaluation" in this case? |
| [KIRKLAND]: | Yes, sir. |
| THE COURT: | Did you say yes? |
| [KIRKLAND]: | Yes, sir. |
| THE COURT: | All right. I'm going to ask you to bring that microphone just a little closer to you. I think that will help us all. |
| [KIRKLAND]: | [Complying.] |
| THE COURT: | And the diagnoses in that were the following: You were diagnosed with unspecified depressive disorder; phencyclidine or PCP use disorder, which is mild in a controlled environment; cannabis use disorder, mild in a controlled environment; opioid use disorder, again mild in a controlled environment; antisocial personality disorder; and borderline intellectual functioning. Do you understand that those were the diagnoses the doctors made about you? |
| [KIRKLAND]: | No, sir. I don't understand. |
| THE COURT: | Okay. Did your attorney explain to you the results of that evaluation that those doctors did to you? |
| [KIRKLAND]: | Yes, sir. |
| THE COURT: | All right. So what I just read to you, those are part of the results of that examination. Do you understand that? |

7

**[KIRKLAND]:**      Yes, sir.

**THE COURT:**      Okay. And do you understand that those are, some of those are what are known as mental health issues. Do you understand what mental health issues are?

**[KIRKLAND]:**      Yes, sir.

**THE COURT:**      All right. And so what I want to understand as best I can from you is whether you believe that you understand everything that you are doing here today and that you think you are able to understand and to proceed today or go forward today with the hearing. Okay?

**[KIRKLAND]:**      Yes, sir.

**THE COURT:**      Do you know of any reason why you should not go forward with this hearing today?

**[KIRKLAND]:**      No, sir.

. . .

**THE COURT:**      All right. I am going to read some things into the record from the competency evaluation so that we have a clear record. I will state the competency evaluation is Docket No. 50 and 50-1 on the Court's CM/ECF system.

I have reviewed the competency evaluation thoroughly and in its entirety. And I am just -- as I say, I'm going to read some portions of this into the record so that we have this -- this will -- the competency evaluation in its entirety will be part of the record, but I'm going to note a few pieces that are mentioned in here.
. . .

Then the conclusions of the competency evaluation are on page 17 of Docket No. 50, and they are the following:

Number one, regarding the issue of mental disease or defect, it is the opinion of this evaluator, Mr. Kirkland currently does present with a mental disease under the law, that being unspecified depressive disorder. Mr. Kirkland does not present with a mental defect.

8

> Number two, regarding the issue of competency to stand trial, it is the opinion of this evaluator, Mr. Kirkland currently does possess a rational and factual understanding of the proceedings against him, does have the capacity to assist legal counsel in his defense and can rationally make decisions regarding legal strategy.
>
> Based on your relationship with Mr. Kirkland, Mr. Bailey, do you have any doubts as to Mr. Kirkland's competency to proceed today?

| | |
|---|---|
| MR. BAILEY: | No, I have no doubt as to his competency and I do agree with the Doc 50 with regard to the communication to him making sure that we speak slowly and clearly and give time to explain to him exactly what was said and what is required of him before going to an answer. |

Doc. 103, Plea Tr. 8:10–11:5, 13:16–16:25.   The Court also inquired about Kirkland's

satisfaction with his counsel's representation up to the time of the change-of-plea hearing:

| | |
|---|---|
| THE COURT: | Do you have any complaints against Mr. Bailey in this case? |
| [KIRKLAND]: | No, sir. |
| THE COURT: | Do you believe he has done everything that you've asked him to do in this case? |
| [KIRKLAND]: | Yes, sir. |
| THE COURT: | Do you believe he has not done anything that you've asked him to do in this case? |
| [KIRKLAND]: | No, sir. |
| THE COURT: | Is there anything that Mr. Bailey should have done that he hasn't done in this case? |
| [KIRKLAND]: | No, sir. |
| THE COURT: | Do you have any complaints against any of the other attorneys who assisted you in this case or who helped you in this case? |
| [KIRKLAND]: | No, sir. |

|                    |                                                                                                                                                                |
| ------------------ | -------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| **THE COURT:**     | Okay. Are you fully satisfied or happy with the services that Mr. Bailey has provided you in this case?                                                          |
| **[KIRKLAND]:**    | Yes, sir.                                                                                                                                                        |

*Id.* at 18:3–22.   The Court also ensured that Kirkland understood that the Court could find that he is an armed career criminal or a career offender:

|                    |                                                                                                                                                                                                                                          |
| ------------------ | ---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| **THE COURT:**     | Now I'm going to talk about if I find that you are an armed career criminal or a career offender and what the range of punishment is for that.                                                                                            |
|                    | If you are an armed career criminal or a career offender, there's a mandatory minimum of 15 years in prison and the maximum sentence of imprisonment in that situation is life in prison. Do you understand that?                         |
| **[KIRKLAND]:**    | Yes, sir.                                                                                                                                                                                                                                |
| **THE COURT:**     | The maximum fine under that scenario is also $250,000. Do you understand that?                                                                                                                                                           |
| **[KIRKLAND]:**    | Yes, sir.                                                                                                                                                                                                                                |
| **THE COURT:**     | And if I find that you are an armed career criminal or a career offender, you could be sentenced to the maximum term of imprisonment or the maximum fine or both. Do you understand that?                                                 |
| **[KIRKLAND]:**    | Yes, sir.                                                                                                                                                                                                                                |
| **THE COURT:**     | Now, I could also sentence you to supervised release as an armed career criminal or a career offender.                                                                                                                                   |
|                    | And, Counsel, is there a mandatory minimum term of supervised release if he's an armed career criminal or career offender?                                                                                                               |
| **MS. DANIS:**     | I believe it's three years, Your Honor, but I cannot say for sure.                                                                                                                                                                       |
| **THE COURT:**     | Do you know, Mr. Bailey?                                                                                                                                                                                                                 |
| **MR. BAILEY:**    | I thought it was five years, but I could be wrong.                                                                                                                                                                                       |

| | |
|---|---|
| **THE COURT:** | I thought five. |
| **MS. DANIS:** | I rarely deal with armed career criminals, so . . . |
| **THE COURT:** | All right. So let's make sure we understand this, Mr. Kirkland. So if I find you are an armed career criminal or a career offender, I could also sentence you to supervised release for that as well. |
| **[KIRKLAND]:** | Yes, sir. |
| **THE COURT:** | It's the same type of supervised release that I just explained to you a few minutes ago. Do you understand that? |
| **[KIRKLAND]:** | Yes, sir. |
| **THE COURT:** | It would just be a longer time of supervised release if I found you an armed career criminal or a career offender. |
| **[KIRKLAND]:** | Yes, sir. |
| **THE COURT:** | So it could be five years of supervised release or it could be longer than five years of supervised release that I could sentence you to. |
| **[KIRKLAND]:** | Yes, sir. |
| **THE COURT:** | It could possibly be the rest of your life that you would be on supervised release after you got out of prison. Do you understand that? |
| **[KIRKLAND]:** | Yes, sir. |
| **THE COURT:** | And the same rules apply on that type of supervised release; meaning that if you did things that you are not allowed to do or if you did not do things that you must do, I could find that you violated your supervised release and I could send you back to prison. |
| **[KIRKLAND]:** | Yes, sir. |
| **THE COURT:** | Counsel, have I accurately stated the range of punishment in this case? |
| **MS. DANIS:** | Yes, Your Honor. |

**MR. BAILEY:**          Yes, Your Honor.

*Id.* at 58:4–60:14.

### D.      Presentence investigation report

Following the change-of-plea hearing, the United States Probation Office prepared a presentence investigation report.    Doc. 91.    The PSR found that Kirkland has at least three prior convictions for a violent felony, and therefore, is an armed career criminal subject to an enhanced sentence under 18 U.S.C. § 924(e).    *Id.* at ¶ 31 (citing to Kirkland's prior convictions for assault second degree, Docket No. 2106R-03619-01, unlawful use of a weapon-exhibiting, Docket No.: 2106R-04788-01, and robbery second degree, Docket No.: 10SL-CR0465-01). Additionally, the PSR calculated Kirkland's base offense level as 24, as Kirkland committed the instant offense subsequent to sustaining at least two felony convictions of a crime of violence. *Id.* at ¶ 25 (citing to Kirkland's UUW and robbery-second convictions noted in PSR ¶ 31); *see also* USSG §2K2.1(a)(2).    The PSR added four levels because Kirkland used or possessed the firearm in connection with another felony offense (possession of a controlled substance—fentanyl) and five levels because Kirkland has at least three prior convictions for a violent felony.    *Id.* at ¶¶ 26, 31; *see also* USSG §2K2.1(b)(6)(B).

Allowing for a three-level reduction for acceptance of responsibility, the PSR determined that Kirkland's total offense level for the instant offense was 30.      *Id.* at ¶¶ 32–34.    The PSR determined that Kirkland had 15 criminal history points, resulting in a criminal history category of VI, and based upon a total offense level of 30 and a criminal history category of VI, determined a guideline imprisonment range of 168 months to 210 months.    *Id.* at ¶¶ 44–47. However, because the statutorily authorized minimum sentences are greater than the minimum of

the applicable guideline range, the guideline range is actually 180 months to 210 months.   *Id.* at

¶ 79; USSG §5G1.2(b).

     **E.**    **Sentencing**

     The Court held a sentencing hearing in March 2021.   Doc. 93.   At the hearing, the

Court confirmed that Kirkland pled guilty because he was in fact guilty of offense charged:

| | |
|---|---|
| **THE COURT:** | Mr. Kirkland, you understand you're under oath and your answers are under penalty of perjury, just as they were when you pled guilty to the offenses you've been charged with. Do you understand that? |
| **[KIRKLAND]:** | Yes, sir. |
| **THE COURT:** | And you pled guilty because you are, in fact, guilty of the offenses charged; correct? |
| **[KIRKLAND]:** | Yes, sir. |

Doc. 100, Sent. Tr. 3:3–10.   The Court also confirmed that Kirkland was still satisfied with

Bailey's representation:

| | |
|---|---|
| **THE COURT:** | When you pled guilty, you told me you were fully satisfied with the services that Mr. [Bailey][sic] had performed for you. Since then have you had enough time to speak with Mr. Bailey and have him answer any and all questions you have about this case? |
| **[KIRKLAND]:** | Yes, sir. |
| **THE COURT:** | Are you fully satisfied with the representation that Mr. Bailey has provided to you in this case? |
| **[KIRKLAND]:** | Yes, sir. |

*Id.* at 3:11–20.   The Court also asked a series of questions related to Kirkland's competency:

| | |
|---|---|
| **THE COURT:** | All right. So are you feeling well, is your mind clear, and are you ready to proceed today? |
| **[KIRKLAND]:** | Yes, sir. |

| | |
|---|---|
| **THE COURT:** | Counsel, I'll ask: Does either counsel have any doubts as to Mr. Kirkland's competency to proceed today? |
| **MR. BAILEY:** | No doubts, Your Honor. |
| **MS. DANIS:** | No doubts, Your Honor. |
| **THE COURT:** | And having taken Mr. Kirkland's plea, as well as having read the reports that I've read in this case, and based on the colloquy here today, I do find that Mr. Kirkland is competent to proceed. |

*Id.* at 6:19–7:5.   And, the Court ensured that Kirkland was able to understand the presentence report:

| | |
|---|---|
| **THE COURT:** | . . . So, Mr. Kirkland, did you -- were you able to read the presentence report? |
| **[KIRKLAND]:** | I went over it with my attorney. |
| **THE COURT:** | All right. And did you have enough time to go over it with your attorney? |
| **KIRKLAND:** | He explained to me what was going on. |
| **THE COURT:** | All right. And did you have enough time to have him answer any and all questionings [sic] you had about it? |
| **[KIRKLAND]:** | Yes, sir. |
| **THE COURT:** | And did you have enough time to answer any and all questions you had about sentencing? |
| **[KIRKLAND]:** | Yes, sir. |
| **THE COURT:** | And you met with him this morning; correct? |
| **[KIRKLAND]:** | Yes, sir. |
| **THE COURT:** | And did you have enough time to meet with Mr. Bailey this morning, too? |
| **[KIRKLAND]:** | Yes, sir. |
| **THE COURT:** | So do you agree that you have no objections to what's in the presentence report? |

| | |
|---|---|
| **[KIRKLAND]:** | My attorney said it was all right, so -- |
| **THE COURT:** | So, you have -- let me ask it this way: You have no reason to disagree with your attorney; is that right? |
| **[KIRKLAND]:** | No, sir. I mean -- |
| **THE COURT:** | All right. Well, let's make sure we understand. Do you have any reason to disagree with your attorney about the presentence report? |
| **[KIRKLAND]:** | No, sir. |

*Id.* at 7:6–8:11.

At the conclusion of the hearing, the Court sentenced Kirkland to an 180-month term of imprisonment followed by a five-year term of supervised release.   Doc. 84.   Kirkland is currently serving his sentencing at FCI Memphis in Tennessee with a projected release date of September 24, 2030.[4]

**F.    Motion to vacate sentence**

In July 2021, Kirkland timely filed a motion to vacate his sentence, citing ineffective assistance and the district court's lack of jurisdiction.   Doc. 1.   In October 2021, the United States filed a response opposing Kirkland's motion to vacate, Doc. 6, and in November 2021, Kirkland filed a reply, Doc. 9.   Due to a clerical error, Kirkland was not sent a copy of his plea transcript until November 19, 2021.   Doc. 10.   As a result, the Court gave Kirkland until January 12, 2022, to supplement his motion to vacate.   *Id.;* Doc. 12.   Rather than supplementing his motion, Kirkland filed a Motion for Evidentiary Hearing.   Doc. 13.   As such, Kirkland's motion is ripe and ready for ruling.

---

[4]*Find an inmate*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited February 28, 2022).

## II.     Standard of review

A federal prisoner who seeks relief under 28 U.S.C. § 2255 on grounds "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).    To obtain relief under section 2255, the petitioner must establish a constitutional or federal statutory violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989)).

Claims brought under section 2255 may be limited by procedural default.    A Petitioner "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994).    Claims, including those concerning constitutional and jurisdictional issues, that a defendant does not raise on direct appeal cannot subsequently be raised in a 2255 motion unless the petitioner establishes: "(1) cause for the default and actual prejudice or (2) actual innocence." *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (citing *Bousley v. United States*, 523 U.S. 614, 621–22 (1998)).

However, ineffective-assistance-of-counsel claims may be raised for the first time in a section 2255 motion even if they could have been raised on direct appeal.    *Massaro v. United States*, 538 U.S. 500, 504 (2003).    This exception exists to prevent petitioners from being forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.*    Additionally, a petitioner's attorney may serve as counsel for both the trial and

appellate case, and it is unlikely that the attorney would raise a claim of his own ineffective assistance on appeal.   *See United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003).

To succeed on an ineffective-assistance-of-counsel claim, a movant must show that counsel's performance was deficient and that the deficient performance prejudice the movant's case.   *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *United States v. Sera,* 267 F.3d 872, 874 (8th Cir. 2001); *DeRoo v. United States,* 223 F.3d 919, 925 (8th Cir. 2000).   A movant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255.   *DeRoo,* 223 F.3d at 925.   An attorney's performance is deficient if it falls "below an objective standard of reasonableness."   *Strickland,* at 687–88; *Sera,* 267 F.3d at 874.   Two substantial impediments exist to making such a showing.   First, the law applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   *United States v. Rice,* 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland,* 466 U.S. at 689); *Sera,* 267 F.3d at 874.   Second, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."   *Rice*, 449 F.3d at 897 (quoting *Strickland,* 466 U.S. at 690).   Similarly, counsel is not ineffective for failing to pursue a motion to suppress that he reasonably believes would be futile.   *Anderson v. United States,* 762 F.3d 787, 794 (8th Cir. 2014).

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b); *see also* Shaw *v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994).   A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (citation omitted).   However, a court may dismiss a

claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043.

## III.   Discussion

Kirkland raises four claims in his motion to vacate: two claims of ineffective assistance of counsel, and two related to the Court's jurisdiction.   Doc. 1.   The Court addresses each claim in turn.

### A.     Ineffective assistance of counsel

#### 1.     Armed-career-criminal finding

Kirkland first claims that Bailey provided ineffective assistance by failing to advise him of the possibility that he could be subject to a 15-year mandatory minimum sentence under the Armed Career Criminal Act.   Doc. 1 at pp. 4–5.   Kirkland specifically claims:

> Counsel failed to provide accurate information for me to consider prior to taking [sic] guilty.   He gave me bad advice when two on [sic] my three prior convictions do not qualify as crimes of violence, and that could not be considered for ACCA, and/or Career Offender status.   Which means that I could have entered into a guilty plea with a cap on it instead of an open ended guilty plea that allowed the judge to consider information about my priors (as crimes of violence) that did not qualify.

*Id.* at p. 4.   The United States urges the Court to deny this assertion outright as demonstrably false.   Doc. 6 at p. 17.   The Court agrees.   Not only did the Guilty-Plea Agreement itself advise Kirkland of the possibility that he could be found an armed career criminal and the associated range of punishment, but the Court also advised Kirkland of the possibility and the associated range of punishment at the change-of-plea hearing.   Even assuming that Bailey did not advise Kirkland of the possibility that the Court could find him an armed career criminal, the Guilty-Plea Agreement and the change-of-plea hearing colloquy eliminate any prejudice

Kirkland may have suffered, as he was properly notified of the possibility.    Accordingly, the Court dismisses Kirkland's claim.

### 2.      PSR objections

Kirkland next claims that Bailey provided ineffective assistance by not objecting to the PSR.    Doc. 1 at p. 8.    The PSR found that Kirkland "is an armed career criminal and subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e)" because Kirkland "has at least three prior convictions for a violent felony (Assault Second Degree, Docket No.: 2106R-03619-01, Unlawful Use of a Weapon-Exhibiting, Docket No. 2106R-04788-01, and Robbery Second Degree, Docket No.: 10SL-CR-04656-01) or a serious drug offense, or both, which were committed on different occasions."    *Kirkland,* 4:17-cr-00616, Doc. 91 at ¶ 31.    Kirkland does not dispute that his second-degree-robbery conviction qualifies as a crime of violence, but he does claim that Bailey provided ineffective assistance by not objecting to the two other violent felonies listed in his PSR:

> Counsel was ineffective at sentencing when he failed to object to the PSI report about the use of Flourishing of a deadly weapon, and Second Degree assault under Mo. Rev. Stat § 565.060, for even caselaw in U.S. v. Bell, 840 F. 3d 963 (8th Cir. 2016) support petitioner's claim that an objection to the PSI for 2nd degree assault was available for written objection to be made on petitioner's behalf.

Doc. 1 at p. 8.

### i.      Missouri's unlawful-use-of-a-weapon statute

Eighth-Circuit precedent going back at least three decades establishes that Missouri's unlawful use of a weapon-exhibiting is a crime of violence under 18 U.S.C. 924(e).    *See, e.g., United States v. Pulliam,* 566 F.3d 784, 788 (8th Cir. 2009) ("Missouri's crime of unlawful use of a weapon meets the statutory definition of violent felony in § 924(e)(2)(B)(i), because it involves the 'use, attempted use, or threatened use of physical force against the person of

another.'") (quoting *United States v. McDile*, 914 F.2d 1059, 1061–62 (8th Cir.1990)).    Thus, the Court finds that Bailey had no legal basis to object to the PSR's finding that unlawful use of a weapon-exhibiting is a crime as violence under the ACCA.    As such, the Court dismisses Kirkland's ineffective-assistance claim as to Missouri's unlawful-use-of-a-weapon statute.    *See Rodriguez v. United States,* 17 F.3d 255, 226 (8th Cir. 1994) ("Counsel's failure to advance a meritless argument cannot constitute ineffective assistance").

### ii.    Missouri's second-degree-assault statute

Kirkland also claims that his second-degree assault conviction does not constitute a violent felony, citing *United States v. Bell*, 840 F.3d 963 (8th Cir. 2016) in support.    However, *Bell* is irrelevant to Kirkland's argument, as it discusses Missouri's second-degree robbery statute—not Missouri's second-degree assault statute—and it is not good law, the Eighth Circuit having overruled it in *United States v. Swopes,* 886 F.3d 668, 671–72 (8th Cir. 2018) (holding that Missouri's second-degree robbery statute categorically qualifies as violent felony under ACCA).

The relevant statute for Kirkland's second-degree assault conviction is Missouri Revised Statute § 565.060.    At the time of Kirkland's conviction, the statute stated "[a] person commits the crime of assault in the second degree if he:

> (1) Attempts to kill or knowingly causes or attempts to cause serious physical injury to another person under the influence of sudden passion arising out of adequate cause; or
>
> (2) Attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument; or
>
> (3) Recklessly causes serious physical injury to another person; or
>
> (4) While in an intoxicated condition or under the influence of controlled substances or drugs, operates a motor vehicle in this state and, when so operating,

acts with criminal negligence to cause physical injury to any other person than himself; or

(5) Recklessly causes physical injury to another person by means of discharge of a firearm; or

(6) Operates a motor vehicle in violation of subsection 2 of section 304.022, and when so operating, acts with criminal negligence to cause physical injury to any person authorized to operate an emergency vehicle, as defined in section 304.022, while such person is in the performance of official duties."

Mo. Rev. Stat. § 565.060 (2006).   Each subsection is a crime with different elements rendering the statute divisible.   *See United States v. Welch,* 879 F.3d 324, 327 (8th Cir. 2018).

With a divisible statute, he Court looks to the judicial record using the modified categorical approach to determine which part of the statute served as the basis for Kirkland's conviction. *Welch,* 879 F.3d at 327; *United States v. Vinton,* 631 F.3d 476, 485 (8th Cir. 2011). Because Kirkland pleaded guilty to the state crime, the Court may look to the charging instrument, the judge's formal ruling of law, findings of fact, the transcript of the plea colloquy, and the plea agreement.   *Vinton,* 631 F.3d at 485.   According to the *Alford* Plea of Guilty, the Information in Lieu of Indictment, and the Sentence and Judgment entered on June 25, 2007, in *State of Missouri v. DaJuan Kirkland,* 06CR-003619, on or about July 30, 2006, Kirkland attempted to cause physical injury to three different individuals by shooting a deadly weapon at them.   *See also Kirkland,* 4:17-cr-00616, Doc. 91 at ¶ 40.   As such, Kirkland committed the offense of second-degree assault under the second subsection of 565.060 by "[a]ttempt[ing] to cause or knowingly caus[ing] physical injury to another person by means of a deadly weapon or dangerous instrument . . .."   Mo. Rev. Stat. 565.060(2) (2006).   Eighth Circuit precedent establishes that Missouri's "second-degree assault, under the second subsection, is a crime that has an element the use, attempted use, or threatened use of physical force against the person of another, and that it is a therefore a crime of violence."   *Vinton,* 631 F.3d at 485   (quotation and

citation omitted); *see also Welch,* 879 F.3d at 327; *United States v. Scott*, 818 F.3d 424, 435 (8th Cir. 2016); *United States v. Alexander,* 809 F.3d 1029, 1032–33 (8th Cir. 2016).

Thus, the Court finds that attorney Bailey had no legal basis to object to the PSR's finding that Kirkland's second-degree assault conviction is a crime as violence under the ACCA. As such, the Court dismisses Kirkland's ineffective-assistance claim as to Missouri's assault-second-degree statute.   *See Rodriguez v. United States,* 17 F.3d 255, 226 (8th Cir. 1994) ("Counsel's failure to advance a meritless argument cannot constitute ineffective assistance").

### B.    District-court jurisdiction

#### 1.    Statutory maximum

Without citing to any authority, Kirkland next claims that the "District Court does not have jurisdiction to sentence [him] above the statutory maximum of 120 months."   Doc. 1 at p. 5.   The Court disagrees.   The ACCA mandates a minimum 15-year term of imprisonment for recidivists convicted of unlawful possession of a firearm under 18 U.S.C. 922(g), who have three prior state or federal convictions for violent felonies or serious drug offenses.   18 U.S.C. 924(e). As determined above, Kirkland is subject to the ACCA, and as a result, the Court—by statute—must impose a term of imprisonment of at least 15 years.   As such, the Court finds that Kirkland's argument lacks merit and dismisses his statutory-maximum claim.

#### 2.    Police reports

Kirkland's remaining claim states that the:

District court did not have subject matter jurisdiction to review police report [sic] to find that I was a career offender.   This is not Taylor and/or Shepard documents Flourishing a Deadly Weapon is not a crime of violence, and using police report [sic] instead of analyzing State Statute in light of Decamps and Mathis, is in violation of Taylor and Shepard.

*Id.* at p. 7.    The Court did not make its ACCA finding based on police reports; it looked to the *Alford* Plea of Guilty, the Information in Lieu of Indictment, and the Sentence and Judgment entered on June 25, 2007, in *State of Missouri v. DaJuan Kirkland*, 06CR-003619.    *See United States v. Kirkland,* 4:17-cr-00616-SRC, Doc. 91 at ¶¶ 39–41 ("According to court records . . ."). Because Kirkland pleaded guilty to the state crime, the Court may look to the charging instrument, the judge's formal ruling of law, findings of fact, the transcript of the plea colloquy, and the plea agreement.    *Vinton*, 631 F.3d at 485; *see also Shepard v. United States,* 544 U.S. 13, 20 (2005).    As such, the Court finds that Kirkland's argument lacks merit and dismisses Kirkland's jurisdictional claim.

## IV.    Conclusion

The Court finds that the record conclusively establishes that Kirkland is not entitled to relief.    Therefore, the Court denies Kirkland [1] Motion to Vacate, Set Aside, or Correct Sentence, and his [13] Motion for Evidentiary Hearing.

## V.    Certificate of Appealability

The Court further finds that Kirkland has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability will issue. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining a substantial showing is a showing the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings). Therefore, the Court will not issue a certificate of appealability.

Dated this 28th day of February 2022.

STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE